UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRUCE A. BANNON                *        CIVIL ACTION

VERSUS                         *        NO: 09-6666

ASSURANT EMPLOYEE BENEFITS     *        SECTION: "D"(3)
AND UNION SECURITY INSURANCE
COMPANY

**ORDER AND REASONS**

Before the court are the following motions:

(1) **Motion for Summary Judgment** filed by Plaintiff, Bruce A. Bannon; and

(2) **Motion for Summary Judgment** filed by Defendant, Union Security Insurance Company (USIC).

The motions, set for hearing on Wednesday, May 19, 2010, are before the court on briefs, without oral argument. Now, having considered the memoranda of counsel, this court's record, the underlying administrative record,[1] and the applicable law, the court finds that there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

---

[1] The Administrative Record (AR) is attached as Exhibit "A" to Doc. No. 19, the Declaration of Thomas Vargo, Vice President of USIC. The AR consists of pages US00001 through US001321.

**I. Factual Background**

Plaintiff was employed as an attorney by the law firm of Galloway, Johnson, Tomkins, Burr & Smith, APLC, and he last worked full time on March 12, 2007, with some return to work between March 12, 2007 and June 15, 2007. (US000254, US000696-97). Plaintiff applied for long term disability benefits under the firm's long term disability policy and stated that his disability first commenced in March 2007 as a result of a toxic reaction to lithium, which he had been taken for his bipolar disorder for twenty-five years. (US000262).

Sun Life Assurance Company of Canada had issued to the law firm a Group Long Term Disability Insurance Policy No. 62206 ("Prior Policy"), effective March 1, 2000. That policy was subsequently replaced with Group Long Term Disability Insurance Policy No. 5,244,440 ("Policy") issued by USIC, with an effective date of June 1, 2006.[2]

The USIC Policy provides for "Continuity of Coverage" and "Prior Plan Credit for Long Term Disability Insurance" as follows:

**Continuity of Coverage**

We will provide continuity of coverage if you were

---

[2] Plaintiff asserts, without citation to the Administrative Record or elsewhere) that the USIC policy was marketed under the trade name "Assurant." (*See* Plaintiff's Supporting Memo., Doc. No. 24-2 at page 7 of 27). The court does note that much of the documentation contained in the Administrative Record is under the letterhead of "Assurant Employee benefits."

covered under the *prior plan*.

...

If you are at *active work* on the Effective Date of the *policy*, you will be insured under the *policy*.

**Prior Plan Credit for Long Term Disability Insurance**

> The benefits payable for *disability* due to a pre-existing condition are limited or excluded unless you meet certain requirements. For any *disability* which would be limited or excluded during the time period to which the limitation or exclusion applies, we will give you credit for time periods which were met under the prior plan by providing the lesser of:
>
> - the benefits of the *policy* without the pre-existing conditions provision, or
>
> - *prior plan benefits* (applying the *prior plan's* pre-existing conditions provision, if any) just as if it had remained in effect.

(AR, US00021).

Regarding **"Pre-Existing Conditions,"** the USIC Policy provides:

We will not pay for any *disability* resulting, **directly or directly**, from a pre-existing condition (defined below) unless the *disability* begins after the earlier of:

- 6 consecutive months, ending on or after the day you became insured under the *long term disability insurance policy*, during which you do not consult with or receive advice from a licensed medical or dental practitioner or receive medical or dental care, treatment or services, including taking drugs, medicine, insulin, or similar substances, for that condition; or

- 24 consecutive months during which you are

3

> continuously insured under the *long term disability insurance policy*.
>
> A "pre-existing condition" means an *injury*, sickness, pregnancy, symptom or physical finding, or any **related** *injury*, sickness, pregnancy, symptom or physical finding, for which you:
>
> - consulted with or received advice from a licensed medical or dental practitioner; or
>
> - received medical or dental acre, treatment, or services, including taking drugs, medicine, insulin, or similar substances
>
> during the 6 months that end on the day before you became insured under the *long term disability insurance policy*.
>
> If your *disability* results from more than one condition, we will determine whether you would be *disabled* in their absence of all pre-existing conditions. If we conclude that you are *disabled* by one or more conditions which are not pre-existing conditions, we well consider your claim as not resulting from a pre-existing condition for so long as this remains true.

(AR, US00029, emphasis added).

Under the USIC Policy, USIC had "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the *policy*. All determinations and interpretations made by us are conclusive." (AR, US000031). In evaluating Plaintiff's claim for disability benefits, Disability Analyst Julie Barron determined that Plaintiff's coverage effective date was June 1, 2006, with a pre-existing (or look back) period of December 1, 2005 through May 31, 2006. (AR, US00254). Barron ordered and obtained Plaintiff's medical and pharmacy records, and

4

USIC's medical staff (including Dr. Patricia Neubauer, staff psychologist/managing team leader of USIC's Behavioral Health Services Department, and Dr. Polly M. Galbrath, Medical Director and head of USIC's Clinical and Behavioral Health Department) reviewed these records and issued reports of their findings. After talking to the doctors about their reports and Plaintiff's file, Barron concluded that Plaintiff's disability resulted from bipolar disorder, a pre-existing condition, and thus was excluded under the Policy. (AR, US001010-17).

Barron also determined that while Plaintiff complained of "permanent" lithium toxicity, "there is nothing to show that this is present, caused ongoing cognitive impairment or that this has caused a limiting condition that would not be subject to the preexisting policy provisions." (AR, US001015). Finally, Barron determined that Plaintiff was entitled to twenty-four months of benefits for disability due to Mental Illness as defined under the former policy. (AR, US001016-17).[3]

On his first-level administrative appeal, Plaintiff argued that "[i]t is [Bannon's] cognitive impairment secondary to lithium toxicity which prevents Mr. Bannon for being able to return to work

---

[3] Barron also determined that Plaintiff was entitled to an additional 13 weeks of long term disability benefits for his July-August 2007 emergency fascistomy of both legs, wound closure and skin grafting, which were considered to be physical conditions that were not pre-existing. (AR, US001016-17).

5

as an attorney," and that USIC should reverse its finding that Bannon's condition "was pre-existing" and limited to twenty-four months. (AR, US000968). USIC, through Dr. Mike Jones, then recommended "a current neuropsychological evaluation with dissimulation measure ... to understand Mr. Bannon's current level of cognitive functioning." (AR, US000965). USIC retained Dr. Michael Chatez, who performed an independent neuropsychological examination of Plaintiff and issued a report of his findings. After reviewing Dr. Chatez's report, Dr. Jones concluded that Plaintiff had cognitive limitations attributed to lithium toxicity and that such limitations would prevent Plaintiff from returning to work as a lawyer. (AR,US000140).

Disability Appeals Specialist Lee Watkins, who consulted with Dr. Jones, accepted that Plaintiff "was disabled due to lithium toxicity. We previously found him to be disabled due to being bipolar, but the IME physician found this to be controlled by the claimant's medication." (AR, US000182). However, Watkins nevertheless found that "[t]he claimant's condition, whether one calls it cognitive disorder, lithium toxicity, or bipolar disorder, is pre-ex to our policy as it's all related." (*Id.*). Watkins noted that:

> I have discussed the claim further with Dr. Jones, who confirmed the claimant's disabling cognitive condition is related to the bipolar

>     and thus pre-ex. Also, the DSM numbers for
>     the claimant's limiting condition are included
>     on page 15 of the IME report, in support of
>     meeting the prior carrier's policy definition
>     of mental illness, which includes
>     classification by the American Psychiatric
>     Association in the Diagnostic and Statistical
>     Manual.

(*Id.*).

Watkins also concluded that since Plaintiff's condition was pre-existing, USIC was correct in limiting Plaintiff's benefits to twenty-four months under the Policy's Prior Plan Credit Provision and the prior plan's definition of mental illness (plus thirteen weeks of benefits allowed for disability due to other conditions). (AR, US000182-83, US000169).

Plaintiff then appealed to the USIC's Disability Appeals Committee, arguing that:

>     It is our position that [USIC's] denial of Mr.
>     Bannon's coverage, finding that his condition
>     was pre-existing as related to his bipolar
>     disorder is unsupported and therefore the
>     denial of his benefits is spurious and
>     baseless. It is from that belief that we
>     request this appeal.
>
>     ...It is your position that Mr. Bannon suffers
>     from bipolar disorder which you contend is the
>     pre-existing mental illness which limits his
>     disability benefits to 24 months.

(AR, US000716).

The Appeals Committee ultimately issued a determination adverse to Plaintiff. It concluded, as had Watkins on the first-

level appeal, that Plaintiff's "cognitive disorder is pre-existing and limited to a maximum benefit duration of 24 months under the terms of the applicable coverage." (AR, US000712). The Appeals Committee explained that:

> The [USIC] policy states that a pre-existing condition is (in part)a sickness, symptom or physical finding, or <u>any related</u> sickness, symptom or physical finding, for which the claimant has been treated in the six months prior to becoming effective, including the taking of medication. You have stated that Mr. Bannon's cognitive impairment was caused by lithium toxicity which was prescribed for bipolar disorder. Thus, Mr. bannon's lithium toxicity is related to his bipolar condition for which he received treatment in the pre-ex period. Thus, it is pre-existing under the Assurant policy.

(AR, US000714).

As to the twenty-four months of benefits payable to Plaintiff, the Appeals Committee explained under the "Prior Plan Credit" provision of the USIC Policy, USIC was obligated to pay Plaintiff the lesser of either benefits payable under USIC's policy without the pre-existing condition or benefits payable under the prior Sun Life policy had it remained in effect. (*Id.*). The Committee concluded that the Prior Plan provided the lesser benefit because that policy contained a twenty-four month limitation on benefits for cognitive disorders, while the USIC Policy does not. (*Id.* at

US000714-715).[4]

On October 5, 2009, having exhausted his administrative remedies, Plaintiff filed this ERISA suit seeking additional long term disability benefits under the USIC Policy. In his instant Motion for Summary Judgment, Plaintiff submits that there is no factual dispute in this case and that Defendant USIC improperly denied Plaintiff long-term disability benefits pursuant to a "pre-existing condition" exclusion that, as a matter of law, is overly broad and violates 29 U.S.C. §1181(a)(1). On the other hand, in its Cross-Motion for Summary Judgment, Defendant USIC argues that its decision to limit Plaintiff's long term disability benefits for his cognitive disorder to twenty-four months is reasonable and based on substantial evidence in the Administrative Record.

## I. Legal Analysis

When a benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits, "trust principles make a *deferential standard* of review appropriate." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105,

---

[4] Under the prior Sun Life Policy, the definition of "Mental Illness" includes cognitive disorders and benefits payable for mental illness are limited to 24 months . (*See* Prior Policy's Limitations & Definition of Mental Health, AR, US000425, 440).

Under the USIC Policy, benefits payable for mental illness are also limited to 24 months, but the definition of "Mental Illness" does not include cognitive disorders. (*See* Policy's Special Conditions & Definition of Mental Illness, AR, US000012, 28).

9

128 S.Ct. 2343, 2348 (2008)(citation omitted). However, if the benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest (i.e., evaluating claims for benefits *and* paying claims for benefits), that conflict must be weighed as one factor among many in determining whether there is an abuse of discretion. *Id.*, 128 S.Ct. at 2350-51.[5] The weight given to the factor is different in each case, but is of greater importance "where circumstances suggest a higher likelihood that it affected the benefits decision ... [and] less important ... where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* at 2351.

Here, the USIC policy gave USIC "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the *policy*. All determinations and interpretations made by us are conclusive."[6] (AR, US000031). Plaintiff argues that "[i]n addition to its role as determiner of eligibility, Union Security was also the payer of benefits" and "[a]s the dual evaluator of eligibility and payer of benefits for Galloway's disability plan, Union Security has a financial stake in

---

[5] In the Fifth Circuit (before *Metropolitan v. Glenn*), when a complaining participant shows that the plan fiduciary has a conflict of interest, courts applied a sliding scale: "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Ellis v. Liberty Life Ass. Co. of Boston*, 394 F.3d 262, 270 (5th Cir. 2005)(citation omitted).

[6] The USIC Policy sets forth in its "General Definitions" section, that "We, us and our mean Union Security Insurance Company." (AR, US00009).

every claim it evaluates." (Doc. No. 24-2, page 11-12 of 27). Plaintiff does not, however, provide this court with any evidence that a conflict exist (i.e., that the determiner and payer are the same) and this court will not presume that one exists.[7] Further, even if the court would find that there was a conflict of interest on USIC's part, Plaintiff has failed to present any evidence that there is a greater likelihood that USIC's conflict affected its decision to deny his claim. Thus, the court reviews USIC's claim determination for abuse of discretion.

Under an abuse of discretion standard, the court considers whether the plan administrator's action was arbitrary and capricious.[8] *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002). The court's "review of the administrator's decision falls somewhere on a continuum of reasonableness-even if

---

[7] The *Ellis* court noted that it would not presume "that a conflict exists *ipso facto* merely because the plan fiduciary both insures the plan and administers it...That an ERISA plaintiff must come forward with evidence that a conflict exists-and that any reduction in the degree of our deference depends on such evidence-belies any duty on our part to make such an assumption. *Ellis*, 394 F.3d at 270, n. 18. (citations omitted).

In *Ellis*, however, the court was satisfied that a legal conflict of interest existed because, in its Objections and Responses to Plaintiff's Request for Admissions, the insurer acknowledged that it has a financial interest in the dollar value of the claims that are paid under the policy. *Ellis*, 394 F.3d at 270.

In the case at bar, USIC does neither disputes nor admits that it has a conflict of interest (as determiner and payer).

[8] "There is only a semantic, not a substantive, difference between the arbitrary and capricious standard and the abuse of discretion standards in the ERISA benefits' review context." *Meditrust Fin. Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)(internal quotation marks and citation omitted).

on the low end." *Vega v. National Life Ins. Co.*, 188 F.3d 287, 297 (5th Cir. 1999)(*en banc).*

Regarding burden of proof under ERISA, "[t]he law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability. Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

The "Pre-Existing Condition Definition" contained in the subject USIC Policy includes not only illnesses during the look-back period, but also "any **related** illness ..." (AR, US00029). Similarly, the Pre-Existing Condition Exclusion applies to disabilities that not only **directly** result from a Pre-Existing Condition, but also those disabilities that result **indirectly** from a Pre-Existing Condition. (*Id.*).

At the outset, the court rejects Plaintiff's argument that this policy language is impermissibly broad and violates 29 U.S.C. §1181. That statute provides:

> (a) Limitation on preexisitng condition exclusion period; crediting for periods of previous coverage
>
> Subject to subsection (d) of this section

> [Exceptions], a **group health plan, and a health insurance issuer offering group health insurance coverage**, may with respect to a participant or beneficiary, impose a preexisiting condition exclusion **only if** -
>
> (1) such exclusion relates to a condition (whether physical or mental), **regardless of the cause of the condition**, for which medical advice, diagnosis, care, or treatment was recommended or received within the 6-month period ending on the enrollment date ...
>
> (b) Definitions
>
> For purposes of this part-
>
> (1) Preexsiting condition exclusion
>
> (A) In general
>
> The term "preexisting condition exclusion" means, with respect to coverage, a limitation or exclusion of benefits relating to a condition based on the fact that the condition was present before the date of enrollment for such coverage, whether or not any medical advice, diagnosis, care, or treatment was recommended or received before such date.

28 U.S.C. §1181(emphasis added).

The statute, by its own terms, is applicable to "a group health plan, and a health insurance issuer offering health insurance coverage." *Id*. Here, the subject policy provides for disability coverage, not health insurance coverage or medical

13

care.[9]  Thus, 29 U.S.C. §1181 is inapplicable on its face.

The court rejects as illogical Plaintiff's argument that, although the language of 29 U.S.C. §1181(a)(1) refers to a group health plan, "this entire section of ERISA is made applicable to any employee benefit plan maintained by an employer engaged in commerce or any industry by 29 U.S.C. §1003." (Plaintiff's Supporting Memo., Doc. No. 24-2 at p. 16 of 27). 29 U.S.C. §1003 makes ERISA broadly applicable to employee benefit plans, which (under 29 U.S.C. §1002(3)) include employee welfare plans and employee pension plans. But there is nothing in §1003 that suggests that all statutory provisions contained in Part 7 of Title 25, Chapter 11, which deals exclusively with group health plans, are applicable to other types of employee welfare benefit plans.

Further, the court finds that Plaintiff's reliance on *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997 (10th Cir. 2004),[10] *Goetz v. Greater Georgia Life Ins. Co.*, 694 F.Supp.2d 802 (E.D.Ten. 2009), and *Vander Pas v. UNUM Life Ins. Co. of America,* 7 F.Supp.2d 1011 (E.D. Wis. 1998), is misplaced. Unlike the policies in those

---

[9] While 29 U.S.C. §1181 does not define "group health plan," the definition of "group health plan" contained I 29 U.S.C. §1167(1) and 1191b(a)(1) refer to plans that provide "medical care." The benefits at issue here are disability benefits, not medical care benefits.

[10] To the extent that *Fought* set forth burden-shifting rules under the arbitrary-and-capricious standard of review when the plan administrator or fiduciary operates under a conflict of interest, the Supreme Court overruled *Fought* in its *Hancock v. Metropolitan Life* decision when it held that conflicts of interest be weighed as a factor in the court's discretionary review.

cases, the USIC policy contains a Pre-Existing Condition Provision that consists of two parts: a Pre-Existing Condition Definition and a Pre-existing Condition exclusion. The Definition includes not only illnesses, but also "any related illness...." The Exclusion removes from coverage not only disabilities resulting *directly* from pre-existing conditions, but also disabilities that result *indirectly* from them.[11] Since the USIC policy by its terms extends to related conditions and disabilities that result indirectly from them, the facts in the Administrative Record justify application of the Pre-Existing Condition with the resulting limitation of benefits.

Next, the court finds that USIC's determination in this case was supported by substantial evidence. The operative facts in this case are undisputed.[12] The effective date of the USIC Policy was June 1, 2006. Plaintiff had bipolar disorder for a long period pre-dating the Policy's look-back period (December 31, 2005 through June 1, 2006), and he took lithium for his bipolar disorder during this period. While Plaintiff was never disabled from his bipolar disorder, in March 2007, Plaintiff suffered toxicity from the

---

[11] In *Fought*, *Goetz* and *Vander Pas*, the pre-existing condition provisions narrower than that in the USIC policy. These narrower provisions are nearly identical and they provide that the policies/plans do not cover any disabilities "caused by, contributed to by, or resulting from [a] pre-existing condition."

[12] In his supporting memorandum, "Plaintiff submits that there is no factual dispute in this case and that the crucial issue is purely legal in nature: the interpretation of the Union Security policy in light of 29 U.S.C. §1181(a)(1)." (Doc. No. 24-2, at p. 10 of 27).

lithium he was taking for his bipolar disorder, and Plaintiff's lithium toxicity caused his disabling cognitive disorder.

Considering the evidence in the administrative record and reading the subject ERISA policy "not in isolation, but as whole,"[13] the court concludes that USIC did not abuse its discretion in concluding that: Plaintiff's bipolar condition fell within the Policy's Pre-Existing Condition Definition; Plaintiff's lithium toxicity was "related" to his bipolar disorder; Plaintiff's lithium toxicity caused his disabling cognitive impairment; Plaintiff's disabling cognitive impairment resulted, directly or indirectly, from his bipolar disorder; and thus, Plaintiff's disabling cognitive impairment falls within the Pre-Existing Condition Exclusion of the USIC policy.

The court also finds that USIC did not abuse its discretion when it determined that Plaintiff's claim would not be considered pre-existing under the Prior Sun Life Policy, and then applied the Prior Credit Provision in the USIC policy to conclude that Plaintiff was entitled to twenty-four months of benefits for his disabling mental condition under that Prior Policy. USIC reasonably concluded that Plaintiff's cognitive disorder from lithium toxicity fell within the Prior Policy's definition of

---

[13] *Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan*, 293 F.3d 282, 288 (5th Cir. 2002).
READ

16

"Mental Illness" and therefore was subject to the Prior Policy's twenty-four month limitation for mental illness. Since the USIC Policy contained no similar limitation, benefits under the Prior Policy were "lesser" than those payable under the USIC Policy, and the Prior Credit Provision of the USIC Policy mandated payment of twenty-four months of benefits for Plaintiff's cognitive disorder.

Accordingly;

**IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment** be and is hereby **DENIED**, and Defendant USIC's **Cross-Motion for Summary Judgment** be and is hereby **GRANTED**.

New Orleans, Louisiana, this **20th** day of **May**, **2010**.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE